The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| THE NEIL JONES FOOD COMPANY, a Washington corporation,<br><br>                                    Plaintiff,<br><br>    v.<br><br>FACTORY TECHNOLOGIES, INC., a California corporation; CENTRAL VALLEY ELECTRIC, INC., a California corporation; and DOES 1 through 20, inclusive,<br><br>                                    Defendants. | Case No. 3:21-cv-05073-MJP<br><br>**DEFENDANT FACTORY TECHNOLOGIES, INC.'S MOTION TO DISMISS, ALTERNATIVE MOTION TO TRANSFER VENUE, AND REQUEST FOR ATTORNEY FEES UNDER RCW 4.28.185(5)**<br><br>NOTE ON MOTION CALENDAR: March 5, 2021<br><br>ORAL ARGUMENT REQUESTED |

**SPECIAL APPEARANCE**

Defendant Factory Technologies, Inc., ("FTI") makes this special appearance to contest both personal jurisdiction and, in the alternative, to transfer venue.

**MOTION 1 – MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

FTI moves this Court to dismiss Plaintiff's Complaint against FTI for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

**MOTION 2 – ALTERNATIVE MOTION TO TRANSFER VENUE TO CALIFORNIA**

In the alternative to Motion 1, FTI moves to transfer venue of this case to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1404(a).

////

BODYFELT MOUNT LLP<br>Attorneys at Law<br>319 SW Washington Street, Suite 1200<br>Portland OR 97204<br>Phone: 503-243-1022 Fax: 503-243-2019

**MOTION 3 – MOTION FOR FTI'S REASONABLE ATTORNEYS' FEES**

FTI moves for its reasonable attorneys' fees, pursuant to RCW 4.28.185(5).

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case concerns a dispute over the reconstruction and renovation of a palletizing line in a cannery in Hollister, California.  Plaintiff owned the cannery.  The defendants, FTI and Central Valley Electric, Inc. ("CVE"), sold some goods to Plaintiff and performed some of the renovation.

Despite the fact that this dispute is over things that did, or did not, happen in California, Plaintiff filed this case in Clark County, Washington.  The only basis for filing there is the contention that FTI agreed to a forum selection clause for Clark County.

This forum selection clause is not a part of FTI and Plaintiff's contract.  FTI sent a proposal to Plaintiff, which contained FTI's terms and conditions, which state that competing terms and conditions contained in any responding purchase order would not be accepted unless expressly agreed to in writing.

Plaintiff had over a week to review this proposal.  FTI then sent a revised proposal to Plaintiff, which also contained FTI's terms and conditions.  FTI and Plaintiff met to go over the proposal.  Plaintiff never objected to FTI's terms and conditions.  Instead, Plaintiff told FTI in a conference call that it would proceed with FTI's proposal, which it confirmed in a subsequent e-mail.  At that point, a contract was formed, whether under the common law or the Uniform Commercial Code ("UCC") and whether under California law or Washington law.  There had been an offer and an acceptance.  FTI began performance upon receipt of the e-mail.

Plaintiff's forum selection clause never enters the picture until after the contract is made, and in reality, it never enters the picture.  *After* Plaintiff accepted FTI's proposal and FTI began to perform, Plaintiff sent a purchase order to FTI.  At the bottom of the page, essentially in a footnote, the purchase order references its own terms and conditions which

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 2

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1  are said to have been sent to FTI, however, Plaintiff never actually sent them. This footnote
2  also purports to provide a link to these terms and conditions.  But when noted, the link didn't
3  work.  Instead manifesting an intent to be bound by FTI's terms and conditions, when Plaintiff
4  e-mailed the purchase order to FTI, Plaintiff attached *FTI's terms and conditions.*

5       Even if Plaintiff had sent its terms and conditions with its purchase order, they would
6  be ineffective for two reasons.  First, given the language of FTI's terms and conditions, which
7  conditioned acceptance upon FTI's terms and conditions and given the language of
8  Plaintiff's terms and conditions, which contained additional material terms that alter the
9  contract, California's UCC section § 2207 does not regard Plaintiff's terms as part of the
10 agreement.  Second, the stealthy presentation and unreasonable burden of Plaintiff's terms
11 and conditions are both procedurally and substantively unconscionable.

12      Since Plaintiff's forum selection clause is unenforceable, the decision of what to do
13 with this case is easy – it should be dismissed or transferred.  FTI is a California entity that
14 contracted, in California, to sell goods and to perform work in California.  Washington's only
15 connection with this dispute is that a Washington entity owned the Hollister plant and
16 someone in Washington was going to ensure that FTI was paid for its work in California.
17 FTI's isolated contacts with Washington are insufficient to confer general jurisdiction and its
18 work in Hollister, California is insufficient to confer specific jurisdiction.  The Court should
19 either dismiss the case or transfer venue to the Eastern District of California where all of the
20 witnesses, except maybe two, either reside or are subject to service.

21                                    **FACTS**

22 **FTI – ITS WORK AND WHERE IT DOES IT**

23      FTI is a California corporation. Its principal and only place of business is in
24 Modesto, Stanislaus County, California. Hoefle Decl. ¶ 2. About 99% of FTI's work is
25 performed in California and the vast majority is performed within one hundred fifty-miles
26 of Modesto. *Id.* ¶ 3.

1 **FTI AND PLAINTIFF FORM A CONTRACT**

2 In December, 2019, CVE approached FTI about a potential project. *Id.* ¶ 4. Jared

3 Hoefle, FTI's president, was told that San Benito Foods had asked CVE to visit its plant

4 in Hollister, California, ("Hollister Plant") to assist San Benito Foods (owned by Plaintiff)

5 in rebuilding the electrical system in the palletizing room, which had been extensively

6 damaged by a roof collapse. *Id.*

7 The damage at the Hollister plant was extensive. *Id.* ¶ 5. Hoefle met with Sam

8 Humphrey and Steve Arnoldy, Plaintiff employees, at the Hollister plant a number of

9 times. *Id.* FTI prepared an initial proposal, which was e-mailed to Plaintiff on December

10 23, 2019.  *Id.*, Ex. 1. Michael Fuerst, of Plaintiff, responded, saying they would have the

11 next week to review the proposal. *Id.*, Ex. 2.

12 FTI's proposal, and all later proposals, included a number of terms.  It provided:

13 4. This quote is based on the incorporation of this letter in its entirety to any subcontract agreement or purchase order, should it be awarded.

14

15 This proposal is subject to FTI, Inc. standard terms and conditions of sale.  Any order resulting from this proposal is subject to acceptance in writing by FTI, Inc. and subject to all FTI, Inc. Terms and Conditions.

16

17 *Id.*, Ex. 1. The Standard Terms & Conditions of Sale, the last page in the proposal,

18 provided:

19 **Acceptance**

20 All purchase orders are accepted based on the continuing precedence of FTI, Inc.'s project terms and conditions as defined herein.  *All buyer terms and conditions as may be contained on purchase orders or other documents from the buyer are taken exception to unless specifically agreed to in writing by a managing member of FTI, Inc. . . .* (emphasis supplied). *Id.*

21

22

23 There were several meetings, phone calls, and negotiations with FTI and Plaintiff.

24 *Id.* ¶ 7.  FTI prepared a revised proposal for the "#10 Can Line Palletizing System." *Id.*,

25 Ex. 3. (which is the same as the Complaint's Exhibit A). This revised proposal contained

26 the same terms quoted above. *Id.*

On January 7, 2020, Hoefle attended a meeting at the Hollister Plant with Arnoldy, Humphrey, Agustin Mota (a Neil Jones employee), and Todd Crawford (a CVE employee) to review FTI's proposal. *Id.*, Ex. 4. Plaintiff did not raise any objections to the FTI "Supply Terms or the Standard Terms & Conditions of Sale" quoted above. *Id.* ¶ 8.

On January 8, 2020, at 1:30, Hoefle participated in a conference call with Plaintiff and CVE. *Id.* ¶ 9. During that call, Plaintiff told Hoefle that it would proceed with FTI's proposal. *Id.* After that meeting, Plaintiff sent an e-mail to CVE at 2:48 p.m. saying: "Per our conversation today please proceed with CVE proposal . . . and Factory Technologies proposal Q3190442-V3-#10 Can Palletizing system." *Id.*, Ex. 6. CVE forwarded that e-mail to FTI the next day. *Id.* ¶ 10.

**FTI BEGINS PERFORMANCE**

Plaintiff wanted the palletizing line running by July 4, 2020. *Id.* Accordingly, after receipt of Plaintiff's confirming e-mail on January 9, 2020, FTI immediately began work. *Id.* It contacted FANUC, a robot manufacturer with California offices, to order the robots for the Hollister plant, because there can be a long lead time. *Id.*, Ex. 6A.

**PLAINTIFF THEN SENDS A PURCHASE ORDER – WHICH DID NOT CONTAIN ITS TERMS AND CONDITIONS, BUT DID INCLUDE FTI'S TERMS AND CONDITIONS.**

After Plaintiff gave FTI the go-ahead and after FTI began performance, David Birts of Plaintiff sent an e-mail to FTI. *Id.* ¶ 11. The e-mail stated, "Good evening, please see attached Purchase order, Thanks." *Id.*, Ex. 7. The e-mail contained two attachments. One was Plaintiff's purchase order. *Id.*, Ex. 9.[1]

The bottom half of the Neil Jones purchase order looks like this:

/ / / /

---

[1] This purchase order is not the one attached as Exhibit B to its complaint. FTI has never seen that document before. *Id.* ¶ 12.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 5

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

| Lin-Sch | NJFC Item #<br>Vendor Item # | Description | Quantity | UOM | Unit Price | Item Total | Due Date |
|---|---|---|---|---|---|---|---|
| 1- 1 | | PALLETIZING ROBOT<br>HARDWARE (4) | 1.00 | EA | 393,122.0000 | 393,122.00 | JAN-10-2020 |
| 2- 1 | | END OF ARM TOOLING<br>(5) | 1.00 | EA | 116,997.0000 | 116,997.00 | JAN-10-2020 |
| 3- 1 | | MACHINE GUARDING<br>SAFETY FENCING | 1.00 | EA | 21,766.0000 | 21,766.00 | JAN-10-2020 |
| 4- 1 | | CONVEYANCE | 1.00 | EA | 384,062.0000 | 384,062.00 | JAN-10-2020 |
| 5- 1 | | ACCUMULATION TABLES<br>(8) | 1.00 | EA | 90,965.0000 | 90,965.00 | JAN-10-2020 |

Buyer:
David Birts
1.559.659.5181
DavidB@njfco.com

Signature On File

Authorized by

The additional terms and conditions " Terms and Conditions of Purchase Order" which have been sent to you and can
be viewed on-line at http://www.neiljonesfoodcompany.com/wp-content/uploads/2012/05/NJFC_TC_Website_2013.pdf
are a part of this Purchase Order as effectively as though they are included on the face of the document.

*Id.*, Ex. 9.[2] Upon receipt, Hoefle did not pay particular attention to the text below the line. Plaintiff had already told FTI to proceed with its proposal and FTI had done so. *Id.* ¶ 16a. Hoefle also knew that FTI's terms and conditions objected to any terms on any later purchase order.

To this point, while the bottom portion of the purchase order states "The additional terms and conditions "Terms and Conditions of Purchase Order" which have been sent to you . . . ." *Id.*, Ex. 9. Plaintiff *never* sent any such additional terms and conditions to FTI on the Hollister Plant project. *Id.* ¶ 16c.

The form also states that these terms and conditions may be viewed on-line, and then it provides a link.[3] *Id.*, Ex. 9. After this dispute arose, a billing person performing work for FTI informed Hoefle that she had tried to access the link, but that she was unable to access it – essentially, the link was inoperable at that time. *Id.* ¶ 16d.

The terms and conditions attached to Exhibit B of the complaint reference a "General Supply Agreement." Plaintiff did not send a "General Supply Agreement" to FTI in connection with the Hollister plant project. *Id.* ¶ 16e.

---

[2] This reproduction is approximately 93% of the actual size.
[3] The link to the Complaint's Exhibit B is *not* the same link on the purchase order sent to Neil Jones – Ex. 9. It does not appear that the terms and conditions attached to Ex. B of the complaint, which purport to be a 2013 version match the link on the Purchase Order of Exhibit B, which suggests a 2018 version.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 6

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1   While Plaintiff did not send its terms and conditions along with the purchase order;

2   it did resend FTI's terms and conditions to FTI with the purchase order. *Id.* ¶ 11; Ex. 7-9.

3   **THE PROJECT CONTINUES; FTI MAKES MORE PROPOSALS AND**

4   **PLAINTIFF ISSUES PURCHASE ORDERS WITHOUT SENDING TERMS AND**

5   **CONDITIONS.**

6   Plaintiff identifies six other purchase orders that may be at issue. Compl. ¶ 21. The

7   process of getting a purchase order was similar for virtually all of the purchase orders –

8   with two exceptions. Purchase orders 0000146660, 0000153036, 0000153730, and

9   0000153765, were all preceded by a proposal from FTI containing FTI's terms and

10   conditions. Hoefle Decl., ¶¶ 13a, 13b, 13e, 13f. None of the purchase orders that followed

11   contained any terms and conditions from Plaintiff. *Id.* These purchase orders totaled

12   $643,162.58.

13   Two of the purchase orders, numbers 0000153501 and 0000153502, were not

14   preceded by a proposal from FTI containing its terms and conditions.  Neither of these

15   purchase orders contained any terms and conditions from Plaintiff.  These two purchase

16   orders totaled $26,178.95.

17   **FTI'S CONTACTS WITH THE STATE OF WASHINGTON**

18   FTI has had contact with Washington on only two other occasions – neither of

19   which involve Plaintiff. *Id.* ¶ 14. FTI contracted with a large California firm to do

20   considerable work. *Id.* ¶ 14a. In 2020, one small aspect of that work called for FTI to travel

21   to Walla Walla to work for two weeks. *Id.* FTI has also contracted with a fairly large

22   national firm, working primarily with the Mesa, Arizona, office. *Id.* ¶ 14b. One part of that

23   work called for FTI to ship a control panel into Washington. *Id.*

24   / / / /

25   / / / /

26   / / / /

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 7

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1  **THE LOCATION OF THOSE KNOWLEDGEABLE ABOUT THE PROJECT AND**

2  **THE FORMATION OF THE CONTRACT.**

3      Hoefle has identified a number of people who are knowledgeable about the project

4  and the formation of the contracts between FTI and Plaintiff. *Id.* ¶ 15. All of them, with the

5  exception of two people, reside in California. *Id.* One of the two people who are not full-

6  time residents of California has an apartment there. *Id.* ¶ 15c.

7  **POINTS AND AUTHORITIES**

8  I.      **FTI did not consent to jurisdiction in Washington.**

9      FTI never agreed to litigate in Washington.  Plaintiff' only basis for Washington

10  jurisdiction, Washington venue, and the application of Washington law is an alleged "written

11  contract," which includes a purported forum selection provision stating any dispute will be

12  governed by Washington law and venued in Clark County.  Compl. ¶ 2.  But the contract

13  had already been made before Plaintiff's attempted to include a forum selection clause.

14      The most basic tenet of contract law is that "a manifestation of mutual assent" is

15  needed to form an agreement between parties.  *Restatement (Second) of Contracts* § 17

16  (1981).  *Guzman v. Visalia Community Bank*, 71 Cal. App. 4th 1370, 1376-77 (1991)

17  (". . . based on the general rule that manifested mutual assent rather than actual mental

18  assent is the essential element in the formation of contracts, the test of the true meaning

19  of an acceptance or rejection . . . is what a reasonable person in the position of the parties

20  would have thought it meant"); *Fed. Deposit Ins. Corp. v. Uribe, Inc.*, 171 Wn. App. 683,

21  688 (2012) ("A contract requires an offer, acceptance, and consideration. . . . Issues of

22  mutual assent are expressed by an offer and acceptance."  (Internal citations omitted)).[4]

23  The balance of this section addresses this issue under both the common law and the

24  UCC.

25

26  [4] While Neil Jones may contend that Washington law applies, presenting a potential conflict of law issue,
the issue is illusory, because California and Washington law agree on the basic issues in this motion.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 8

1

2

     a. *A contract was formed when Plaintiff accepted FTI's offer by sending the "go ahead" email; the forum selection clause was not even in play.*

3   FTI first sent Plaintiff its proposal, containing FTI's terms and conditions, on

4   December 23, 2019.  Hoefle Decl. ¶ 6.  FTI and Plaintiff met and negotiated FTI's proposal.

5   FTI prepared and sent a revised proposal, again with FTI's terms and conditions attached,

6   to Plaintiff on January 7, 2020.  *Id.* ¶ 7, Ex. 3. This was FTI's offer. FTI met with Plaintiff

7   representatives at the Hollister Plant to review and discuss FTI's proposal, which included

8   FTI's terms and conditions. *Id.* ¶¶ 7, 8. The next day, Plaintiff gave FTI the go ahead, sending

9   a confirming e-mail to CVE. *Id.* ¶ 9, Ex. 6.  This was an acceptance of FTI's offer, which

10   included FTI's terms and conditions.  After receiving Plaintiff's "go ahead" email, FTI started

11   performance by placing an order for a robot called for in the accepted proposal.  *Id.* ¶ 10.

12   Plaintiff then doubled down on FTI's terms: it sent its purchase order to FTI along

13   with <u>FTI's</u> terms and conditions.  *Id.* ¶ 11, Exs. 7-9.  Putting aside the fact that Plaintiff again

14   assented to FTI's terms by including them in its e-mail, Plaintiff sent its own purchase order

15   after mutual assent and after FTI began performing in accordance with the terms of the

16   contract.

17   Under common law, a contract is reached where the acceptance matches the offer.

18   *Steiner v. Mobil Oil Corp.*, 20 Cal 3d 90, 99 (1977).  Plaintiff's "go ahead" email was the

19   mirror acceptance of FTI's offer. At that point there was a contract, without any forum

20   selection clause.  Plaintiff's e-mail containing the purchase order also mirrored FTI's offer

21   because it was accompanied by FTI's terms and conditions.

22

23

24

     b. *Plaintiff's separate terms and conditions, including the forum selection clause could not be a part of the contract because they were never transmitted – they were too well hidden.*

25   Plaintiff's forum selection clause could not have been part of FTI and Plaintiff's

26   agreement because Plaintiff never sent it to FTI.  The purchase order says the Plaintiff terms

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 9

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1   and conditions had been sent to FTI, but they had not been sent. While Plaintiff referenced

2   the terms and conditions in a link at the bottom of its purchase order, a later attempt to

3   access those terms and conditions failed because the link was inoperable.

4       Assuming one found the terms and conditions, the forum selection clause was buried

5   in a wall of text under a heading entitled DISPUTE RESOLUTION on the second page of

6   Plaintiff's terms and conditions in proverbial fine print. If Plaintiff had wanted to bring these

7   terms to someone's attention, it failed.  If it wanted to make sure few people saw them, it

8   succeeded.  In essence, Plaintiff never provided its terms and conditions to FTI, so FTI could

9   not have assented to the terms.

10       c.   *Even if Plaintiff's terms and conditions had been incorporated into the overall*

11         *agreement, they still fail under the UCC battle of the forms analysis.*

12       As set forth above, the contract was formed when Plaintiff accepted FTI's proposal,

13   before Plaintiff's terms and conditions entered the picture.  But assuming that they had timely

14   entered the picture, they would not have been part of the contract; FTI wins the battle of the

15   forms.

16       A battle of the forms arises where two merchants enter into a transaction with forms

17   that contain competing terms.  If a party's acceptance of an offer contains additional terms,

18   the additional terms may become part of the contract <u>unless</u>: (1) the offer expressly limits

19   acceptance to the terms of that offer; (2) the additional terms in the acceptance materially

20   alter the contract; or (3) the offeror objects to the additional terms.  California Commercial

21   Code § 2207.  The first two conditions are satisfied, so only FTI's terms and conditions apply.

22       i.   <u>FTI's offer expressly rejected additional terms.</u>

23       FTI's terms and conditions expressly limit the agreement to its own terms.  "If terms

24   of the offer and acceptance differ, the terms of the offer become part of a contract between

25   merchants if the offer expressly limits acceptance to its own terms, or if the varying terms of

26   the acceptance materially alter the terms of the offer."  *Steiner*, 20 Cal. 3d at 94.  *See also*

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 10

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

*Lockheed Electronics Co. v. Keronix, Inc.*, 144 Cal. App. 3d 304, 311 (1981); Cal. Com. Code § 2207(2)(a). FTI's offer included the following language:

> **All purchase orders are accepted based on the continuing precedence of FTI, Inc.'s project terms and conditions as defined herein. All buyer terms and conditions as may be contained on purchase orders or other documents from the buyer are taken exception to unless specifically agreed to in writing by a managing member of FTI, Inc.**

Compl., Ex. A, last page (emphasis added). FTI's offer expressly limits its agreement with Plaintiff to FTI's terms only. No managing member of FTI specifically agreed in writing to Plaintiff's additional terms. Because of this limiting language, FTI's terms Plaintiff's terms.

ii. <u>Plaintiff's terms also materially alter its agreement with FTI.</u>

Plaintiff's additional terms do not become part of the agreement because they materially alter it. *Steiner*, 20 Cal. 3d at 94. Forum selection clauses are material alterations. *Trans-Tec Asia v. M/V Harmony Container*, 435 F. Supp. 2d 1015, 1025-26 (C.D. Cal. 2005);[5] *TRA Indus. v. Valspar Corp.*, 2010 U.S. Dist. LEXIS 72427, *14 (E.D. Wash. 2010) (citing *Tacoma Fixture Co. v. Rudd co.*, 142 Wn.App. 547 (2008)). *See also, Product Components, Inc. v. Regency Door & Hardware, Inc.*, 568 F. Supp. 651, 655 (S.D. Ind. 1983). In *Product Components*, for example, the court justified its reasoning on the ground that the "selection of a distant forum with which a party has no contacts, while enforceable if contained in an agreement freely and consciously entered into, can result in surprise and hardship if permitted to become effective by way of confirmation forms that unfortunately are all too often never read." *Product Components*, 568 F. Supp. at 655.

An additional term is a material alteration "if it would 'result in surprise or hardship as incorporated without express awareness or hardship by the other party." *Steiner*, 20 Cal.

---

[5] *Trans-Tec Asia* helpfully catalogues caselaw in which courts have found forum selection provisions to materially alter agreements. *Id.* at 1025-26.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 11

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1    3d at 102 (quoting U.C.C. § 2-207 cmt. 4).[6] Here, Plaintiff's terms would cause surprise and

2    hardship by requiring FTI to litigate in a forum over 800 miles away from the vast majority of

3    witnesses.  Plaintiff's terms would materially alter the agreement even if the court did not

4    find the forum selection clauses to be a material alteration as a matter of law.

5                    **1.  The forum selection clause would be a surprise.**

6            Many courts find surprise where, under the circumstances, it cannot be presumed

7    that a reasonable merchant would have consented to the additional term.  Timothy Davis,

8    *U.C.C. Section 2-207: When Does an Additional Term Materially Alter a Contract?* 65 Cath.

9    U.L. Rev. 489, 504 (2016); *Carr v. Michael Weinig, AG*, 2006 U.S. Dist. LEXIS 57227, at

10   *15-17 (N.D.N.Y. 2006).

11           A reasonable merchant under the circumstances would not have consented to

12   Plaintiff's forum selection provision.  A reasonable merchant with a majority of its business

13   in California would not have agreed to fix venue in Washington.  About 99% of FTI's work is

14   performed in California, most of it within a one hundred fifty-mile radius of Modesto.  *Id.* ¶ 3.

15   This case concerns work and the sale of goods in Hollister, California.  *Id.* ¶ 4.  A reasonable

16   merchant in California would not agree to litigate in a forum over 800 miles away.  For these

17   reasons, Plaintiff's forum selection provision would cause (and did cause) surprise.

18                **2.  Plaintiff's forum selection clause causes hardship to FTI.**

19           Hardship is viewed in economic terms; it exists where a clause "creates or allocates

20   an open-ended or prolonged liability."  Davis, *supra*; *Carr*, 2006 U.S. Dist. LEXIS 57227, at

21   *15-17.  Forcing the parties to conduct protracted litigation in Washington, especially when

22   the goods at issue were installed in California and all of the witnesses are in California,

23   creates a hardship for FTI.  If forced to litigate in Washington, FTI would need to continually

24

25

26   [6] RCW 62A.2-207 likewise incorporates the "surprise or hardship" test outlined in comment 4 of U.C.C. §
     2-207 when assessing for material alterations. *See Rottinghaus v. Howell*, 35 Wn.App 99, 106 (1983).

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 12

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1  travel north from California to defend this action.  Plaintiff's forum selection clause
2  substantially shifted litigation-related risk, causing hardship.

3       Forum selection clauses are considered *de jure* material alterations to contracts.
4  *Trans-Tec Asia*, 435 F. Supp. 2d at 1025-26.  And here, Plaintiff's forum selection provision
5  meets both the surprise and hardship prongs, so the provision would materially alter the
6  parties' agreement.  Even if Plaintiff's terms had been timely proposed, they are a material
7  alteration and would not become part of the contract.

8       d.  *Even if incorporated into the parties' agreement, Plaintiff's hidden forum
9           selection clause is unconscionable and should not be enforced.*

10      Even if incorporated into the agreement, Plaintiff's forum selection clause should not
11  be enforced because it is unconscionable. Unconscionability is the absence of meaningful
12  choice on the part of one of the parties, coupled with contract terms which are unreasonably
13  favorable to the other party.  *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486
14  (1982).[7]  Unconscionability has both procedural and substantive components.  *Id.*

15           **1.  Plaintiff's forum selection clause is procedurally
16               unconscionable.**

17      Procedural unconscionability focuses on "oppression" and "surprise."  U.C.C. §
18  2-302.  "Oppression" arises from an inequality of bargaining power, which results in no real
19  negotiation and "an absence of meaningful choice."  *A & M Produce Co.*, 135 Cal. App. 3d
20  at 486.  "Surprise" involves the extent to which the supposedly agreed-upon terms of the
21  bargain are hidden in a prolix printed form drafted by the party seeking to enforce the
22  disputed terms.  *Id.*, citing Ellinghaus, *In Defense of Unconscionability* (1969) 78 Yale L.J.

---

[7] Washington law articulates unconscionability under RCW 62A.2-302 similarly: "[s]ubstantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh." *Schroeder v. Fageol Motors*, 86 Wn.2d 256, 260 (1975); while "procedural unconscionability is best described as a lack of 'meaningful choice.'" *Id.*

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 13

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1   757, 764-765; Eddy, *On the "Essential" Purposes of Limited Remedies: The Metaphysics of*

2   *UCC Section 2-719(2)* (1977).

3        Plaintiff's forum selection clause is both oppressive and surprising. The parties had

4   already agreed to FTI's terms and conditions well before Plaintiff sent its purchase order

5   supposedly referencing its own.  When Plaintiff sent its purchase order, it also returned FTI's

6   terms and conditions, without objection and presumably assenting to them. Plaintiff did not

7   send its terms and conditions, and there were considerable obstacles to accessing and then

8   digesting those terms and conditions. Plaintiff's terms are procedurally unconscionable.

9        **2.   Plaintiff's   forum   selection   clause   is   substantively**

10   **unconscionable.**

11        Substantive unconscionability examines overly-harsh results and whether risks of the

12   bargain are reallocated in an objectively unreasonable or unexpected manner.  *A & M*

13   *Produce Co.*, 135 Cal. App. 3d at 487. Plaintiff's forum selection clause unreasonably

14   reallocates the risk in its favor.  All of the events giving rise to this action occurred in

15   California.  An attempt to contractually shift litigation to Washington when everything and

16   everyone is in California is both unreasonable and unexpected.  Plaintiff's forum selection

17   provision is unconscionable and unenforceable.

18        A buried forum selection clause, contained within a terms and conditions page that

19   was never actually sent to FTI cannot be considered the kind of "freely bargained for" forum

20   selection clause that is essential to its enforcement.  See Bremen v. Zapata Off-Shore Co.,

21   407 U.S. 1, 16 (1972). The offense of a hidden clause is especially pronounced given the

22   manifest burden of forcing virtually every witness in this case to travel to Washington to

23   describe events that entirely occurred in California.

24        In sum, FTI never agreed to litigate in Washington.  Plaintiff not only negotiated and

25   assented to FTI's terms and conditions, but it never provided its own terms to FTI.  Assuming

26   that these terms were somehow transmitted to FTI, they are not an enforceable part of the

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 14

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

contract for two reasons.  First, Plaintiff's terms lose a battle of the forms with FTI's terms.

Second, the forum selection clause is unconscionable.

## II.   Absent the Forum Selection Clause, Plaintiff cannot establish the Court has personal jurisdiction over FTI.

Plaintiff bears the burden to show that Washington has personal jurisdiction over FTI. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

### a.  *FTI does not have "continuous and systematic" contacts with Washington sufficient to support general jurisdiction.*

General jurisdiction exists where out-of-state defendants engage in general business contacts that are so "continuous and systematic" as to "render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  "The standard for general jurisdiction is high." *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011).  It is "met only by continuous corporate operations within a state that are thought so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities." *King*, 632 F.3d at 579 (internal quotation marks and citation omitted).  Plaintiff must show that FTI's contacts in Washington are so extensive that it "may in fact be said already to be 'present' there.'" *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Plaintiff cannot make that showing.  FTI has worked two weeks in Washington and shipped one control panel to the state.  That is not continuous and systematic presence.

### b.  *Plaintiff cannot satisfy specific jurisdiction.*

Specific jurisdiction requires: (1) the defendant did some act to "purposefully avail" himself of the privileges of conducting activities in the forum state; (2) the claim arose out of or resulted from defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). To avoid dismissal, Plaintiff must prove the first two prongs, and only if successful, does the burden shift to FTI

DEFENDANT FACTORY TECHNOLOGIES, INC.'S MOTION TO DISMISS, ALTERNATIVE MOTION TO TRANSFER VENUE, AND REQUEST FOR ATTORNEY FEES UNDER RCW 4.28.185(5) (3:21-cv-05073-MJP) – Page 15

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1    to "come forward with a compelling case" that the exercise of jurisdiction would not be

2    reasonable. *Boschetto*, 539 F.3d at 1016.

3                             i.   FTI did not avail itself of the privileges of conducting activity in

4                                 Washington.

5           To have purposefully availed itself of the privilege of doing business in the forum, a

6    defendant must have "performed some type of affirmative conduct which allows or promotes

7    the transaction of business within the forum state." *Id.* In contract disputes, the mere

8    existence of a contract between a resident of the forum state and an out-of-state defendant

9    does not, by itself, establish the required minimum contacts for purposes of exercising

10   personal jurisdiction. *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (1990).

11   Instead, the court considers prior negotiations, contemplated future consequences, the

12   terms of the contract, and the parties' actual course of dealing to determine whether the

13   purposeful availment element is satisfied. *Id.* The use of mail, telephone, or other

14   communications alone does not qualify as purposeful activity invoking the benefits and

15   protection of the forum state. *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985).

16   "The purposeful availment requirement ensures that a nonresident defendant will not be

17   haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state."

18   *Panavision Internat'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Burger*

19   *King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

20          This case stems from FTI's sale of a robotic palletizing system and its installation in

21   Hollister, California.  All negotiations over FTI's proposal took place in California. The final

22   review of the negotiated proposal for the robotics system, its installation, and FTI's terms for

23   the sale and work occurred at Hollister, California. *Id.* ¶ 8.

24          The mere fact that Plaintiff is headquartered in Washington does not establish

25   specific jurisdiction of the Washington courts over FTI.  There is nothing to suggest that FTI

26   availed itself of the protection of Washington laws in making a contract in California, for the

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 16

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1    purpose of selling and installing goods at a Californian food processing plant.

2            ii.    Plaintiff's claims against FTI did not arise out of or result from any

3                   activity by FTI in Washington.

4        Plaintiff's claims arise out of goods sold and installed at Hollister, California. The

5    contract was negotiated with Plaintiff's California-based agents. The central facts giving rise

6    to this claim relates to FTI's activity *in California*. Plaintiff cannot meet this second element

7    and cannot establish specific jurisdiction over FTI.

8            iii.   Exercising personal jurisdiction over FTI would be unreasonable.

9        Even if Plaintiff could establish the two elements above, jurisdiction over FTI would

10   be unreasonable. The Ninth Circuit balances seven factors to determine whether the

11   exercise of personal jurisdiction is "reasonable," including: 1) the extent of the defendant's

12   purposeful interjection into the forum state's affairs; 2) the burden on the defendant to defend

13   in the forum state; 3) conflicts of law between the defendant's state and the forum state;[8] 4)

14   interests of the forum state in adjudicating the dispute; 5) the most efficient forum to resolve

15   the dispute; 6) the forum state's importance to plaintiff's interest in effective and convenient

16   relief; and 7) whether an alternative forum exists. *Gray & Co.*, 913 F.2d at 761.

17       Here, the exercise of jurisdiction would be unreasonable. First, FTI has not

18   purposefully interjected itself into Washington's affairs.[9] Second, all of FTI's representatives

19   and employees live and work in California, and defending these claims in Washington would

20   be expensive, inconvenient and burdensome for it. Plaintiff's key representatives involved

21   in the transaction at issue also live or work in California. Third, Washington has little interest

22   in resolving responsibility among California entities and California representatives for a plant

23   in Hollister, California owned by Plaintiff.  Fourth, Washington is not the most efficient forum

24

25   _____

        [8] FTI does not anticipate that conflict of laws would factor one way or another.
26      [9] FTI has had isolated contacts with Washington two other times, but only at the direction of non-Washington
        entities.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 17

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

to resolve this dispute. Virtually all, if not all, witnesses and evidence is in California, a viable alternative forum. Washington may be important to Plaintiff, but effective and convenient relief exists equally in California. Assessment of these factors demonstrates that the exercise of jurisdiction in Washington would be unreasonable.

**III.   This Court should transfer venue to the Eastern District of California pursuant to 28 U.S.C. § 1404.**

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The first step of this analysis is to determine whether this case could have been brought in the Eastern District of California. If so, the court then considers whether it should transfer this case to that district in the interest of justice and convenience.

   a.   *This case could have been brought in California.*

The Eastern District of California would have diversity jurisdiction over the parties in this matter pursuant to 28 U.S.C. § 1332(a) for the same reasons that this Court has diversity jurisdiction. Plaintiff is a Washington corporation. Compl. ¶ 3. FTI is a California corporation with its principal place of business in Modesto, California. Hoefle Decl. ¶ 2. CVE is also a California corporation with its principal place of business in California.

Venue would be proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Modesto, California, which is in the Eastern District. That is where defendants FTI and CVE are located. Naturally, FTI denies that Plaintiff's claim has any merit; but the allegations of improper design squarely implicate FTI's work in Modesto, which is where a substantial part of the events or omissions giving rise to the claim took place.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 18

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1      Since venue is proper in the Eastern District of California, the next step is to

2  determine whether the case should be transferred there based on the convenience of

3  parties and witnesses and in the interest of justice.

4          b.   *Weighing the factors of the Ninth Circuit's balancing test favors California*

5               *as the venue.*

6      A motion to transfer must be considered in light of the purpose of 28 U.S.C. §

7  1404(a), which is to "prevent the waste 'of time, energy, and money' and 'to protect

8  litigants, witnesses and the public against unnecessary inconvenience and expense.'"

9  *Amazon.com v. Cendant Corp.,* 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005), *quoting*

10 *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  Congress intended 28 U.S.C. § 1404(a)

11 to require a "lesser showing of inconvenience" than was traditionally required under the

12 *forum non conveniens* doctrine.  *Id., citing Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

13 The court determines whether a party meets that lesser showing of inconvenience by a

14 case-by-case consideration of various factors relating to convenience and fairness.

15 *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000), *quoting Stewart Org.,*

16 *Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988).

17     The Ninth Circuit balances the following factors in its case-by-case analysis of

18 convenience and fairness:

19         (1) the location where the relevant agreements were negotiated and
           executed, (2) the state that is most familiar with the governing law,
20         (3) the plaintiff's choice of forum, (4) the respective parties' contacts
           with the forum, (5) the contacts relating to the plaintiff's cause of
21         action in the chosen forum, (6) the differences in the costs of
           litigation in the two forums, (7) the availability of compulsory process
22         to compel attendance of unwilling non-party witnesses, and (8) the
           ease of access to sources of proof.
23

24 *Jones*, 211 F.3d at 498-99.  Public policy considerations of the forum state are also a

25 significant factor.  *Id.* at 499.  Applying these factors, the significantly stronger connection

26 with this case lies in California, and not Washington.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 19

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1                      i.   <u>The location where the relevant agreements were negotiated and</u>

2                         <u>executed</u>

3       The Western District of Washington has repeatedly held this factor relates to exactly

4 what it says—the location where the agreement was negotiated and executed—and not

5 where the contract was drafted or any other related arguments. *Smalls v. Trueblue, Inc.*,

6 2015 U.S. Dist. LEXIS 83497, *6 (W.D. Wash. 2015); *Lifelast, Inc. v. Charter Oak Fire Ins.*

7 *Co.*, 2014 U.S. Dist. LEXIS 139770 (W.D. Wash. 2014). Here, that agreement was

8 negotiated and executed in California.

9                     ii.   <u>State most familiar with the governing law</u>

10       This lawsuit concerns a California transaction and contract. Plaintiff's terms and

11 conditions do not apply for the reasons set forth in Section I, above. Instead, FTI's terms

12 apply, which call for the agreement to be interpreted, enforced, and governed under the laws

13 of California. Compl., Ex. A. It is more appropriate for a California court to interpret and apply

14 California law in this matter than for this Court to take on such a task. *See Gulf Oil Corp. v.*

15 *Gilbert*, 330 U.S. 501, 509 (1947) (it is appropriate to have the trial "in a forum that is at

16 home with the state law that must govern the case, rather than having a court in some other

17 forum untangle problems in conflict of laws, and in law foreign to itself").

18       Even absent the agreement to have California law apply, the place of intended

19 performance was California. Plaintiff has substantial contacts with California (including

20 ownership of the San Benito Foods processing plant). California substantive law will apply.

21 *Mulcahy v. Farmers Ins. Co.*, 152 Wash. 2d 92, 100 (2004), *citing Pacific Gable Robinson*

22 *Co. v. Lapp*, 95 Wash. 2d 3342, 343 (1980) ("the validity and effect of a contract are

23 governed by the law of the state having the most significant relationship with the contract.").

24                    iii.   <u>Plaintiff's choice of forum</u>

25       The court must weigh the preference given to the plaintiff's choice of forum with

26 the burden of litigating in a forum that is inconvenient and, on balance, not in the interest

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 20

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

of justice.  Although a plaintiff's choice of forum is given weight, that choice deserves less

deference if the plaintiff does not reside in the forum and the relevant facts occurred

elsewhere.  *Amazon,* 404 F. Supp. 2d at 1260, *citing Saleh v. Titan Corp.,* 361 F. Supp.

2d 1152, 1156 (S.D. Cal. 2005); *Inlandboatmen's Union of the Pac. v. Foss Maritime Co.*,

2015 U.S. Dist. LEXIS 444, *7 (W.D. Wash. 2015) ("courts are hesitant to defer to a

plaintiff's choice of forum when the case lacks strong ties to that district").  The venue of

the case should be the district "as close as possible to the milieu of the infringing device

and the hub of activity centered around its production." *Amazon,* 404 F. Supp. 2d at 1260

(citing *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 (D. N.J. 1993)).

Here, the "hub of activity" did not occur in Washington but in California, where the

parties met, negotiated, contracted, and performed.  Plaintiff's choice of a Washington

forum should not be given significant weight.

### iv.  Parties' contacts with the forum

FTI has almost no contact with Washington.  It is not incorporated in Washington,

and has conducted a miniscule amount of business in Washington – only at the behest of

non-Washington entities.

Plaintiff is a Washington corporation.  But its contacts with California are significant.

It owns food processing plants—including the Hollister plant where FTI performed its work—

in California.

### v.  Contacts relating to plaintiff's cause of action in the chosen forum

There are hardly any contacts with Washington.   Plaintiff is headquartered in

Washington, but for all intents and purposes, acted as a California entity for the issues in

this lawsuit.  Plaintiff's California-based representatives met with FTI in California.

Plaintiff's California based entities contracted with FTI to buy goods to be installed at the

Hollister plant in California.  The only Washington contact related to the case may be that

someone in Washington would be charged with sending payment to FTI in California.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 21

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1    This factor weighs in favor of transferring the case.

2                    vi.   Differences in the costs of litigation in the forums

3    Virtually all witnesses, if not all witnesses, reside in California. Both Plaintiff and FTI

4    would bear the cost of bringing witnesses 800 hundred miles north if the case remains in

5    Washington. But those same witnesses would be very close to the place of trial in California.

6    The cost of litigating this case in California would be significantly less.

7                    vii.   Availability to compel attendance of unwilling non-party witnesses

8    The witnesses to this matter will likely include the many individuals listed in paragraph

9    15 of Hoefle's declaration. All of those witnesses, save two, reside in California. One who

10   doesn't reside in California full time, has an apartment in California. Many of these witnesses

11   live within the Eastern District of California; the others live within 100 miles of the Eastern

12   District of California and are subject to subpoena. On the other hand, none of the potential

13   witnesses, except maybe two, would be subject to subpoena by a Washington court.

14                   viii.   Ease of access to sources of proof

15   Key to this factor is "the location of witnesses, documentary evidence, and inventory

16   to be inspected, if any." *Inlandboatmen's*, 2015 U.S. Dist. LEXIS 444 at *13 (citing *Jones,*

17   211 F.3d at 499). As discussed above, the witnesses are located in California. When

18   considering the convenience of party witnesses, which the Court is entitled to consider, more

19   of the potential witnesses reside in California than in Washington. *Burns v. Gerber Prods.*

20   *Co.,* 922 F. Supp. 2d 1168, 1173 (E.D. Wash. 2013).

21   Documentary evidence is a lesser consideration because it can, generally, be

22   produced electronically without an appreciable difference in cost between venues. *Id.* at

23   1173. FTI is unaware of the form of Plaintiff's documentary evidence—whether it is in

24   electronic or paper form. Any paper-form file materials of which FTI is in possession are

25   located where its principal place of business is located—in California. However, given the

26   ease of electronic document transmission, access to FTI's and Plaintiff's documentary

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 22

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

1  evidence is unlikely to be a significant factor.

2      Overall, the location of the witnesses weighs heavily in favor of transferring the case

3  to California.

4              ix.  Public policy considerations

5      The Court should consider the forums' public policy concerns.  *Jones*, 211 F.3d at 499.

6  "Public policy factors include the 'local interest in having localized controversies decided at

7  home' and deciding cases 'where the claim arose….'"  *Inlandboatmen's,* 2015 U.S. Dist.

8  LEXIS 444 at *14 (citing *Decker Coal,* 805 F.2d at 843).

9      Washington's interest in this case is limited. While "forum states have an interest in

10  providing redress for their injured residents," *Id.*, Plaintiff's ties to California under the

11  circumstances at issue in this lawsuit are far more substantial than its ties to Washington.

12  This controversy is a California dispute that should be decided in California.

13              x.  Conclusion

14     That there is some connection to Washington does not negate the fact that there are

15  greater connections, both quantitative and qualitative, to California.  The Eastern District of

16  California should hear this case because California's substantive law will apply; the

17  witnesses are from California, and this concerns a California plant.  FTI requests this Court

18  grant its alternative motion to transfer this case to the Eastern District of California.

19  **IV.   FTI should be awarded its attorney fees defending this action in**

20         **Washington.**

21     RCW 4.28.185(5) authorizes courts to award reasonable attorney fees to a defendant

22  who, having been improperly haled into a Washington court under the long-arm statute,

23  prevails in the action.  The statute provides:

24              In the event the defendant is personally served outside the state on
               causes of action enumerated in this section, and prevails in the action,
25              there may be taxed and allowed to the defendant as part of the costs
               of defending the action a reasonable amount to be fixed by the court
26              as attorneys' fees.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S
MOTION TO DISMISS, ALTERNATIVE MOTION TO
TRANSFER VENUE, AND REQUEST FOR
ATTORNEY FEES UNDER RCW 4.28.185(5)
(3:21-cv-05073-MJP) – Page 23

RCW 4.28.185(5).  This statute "authorizes trial courts to award attorney fees to defendants who prevail jurisdictionally."  *Scott Fetzer Co. v. Weeks*, 114 Wn. 2d 109, 114 (1990).  It entitles a non-Washington defendant to recover the "added costs of litigating in Washington."  *Payne v. Saberhagen Holdings, Inc.*, 147 Wn. App. 17, 36 (2008).  At a minimum, this should include the amount reasonably incurred in presenting its jurisdictional defense.  *In re Marriage of Yocum*, 73 Wn. App. 699, 707 (1994).

## CONCLUSION

This case is only in Washington because of Plaintiff's forum selection clause.  But that clause is not a part of the contract between Plaintiff and FTI.  Plaintiff and FTI's contract was already made before Plaintiff attempted to introduce its terms and conditions.  Plaintiff failed to effectively transmit its terms and conditions and even if it had, those terms would not be a part of the contract between the parties, because FTI wins the "battle of the forms."

Absent the forum selection clause, Washington does not have jurisdiction over FTI.  This California dispute involving California witnesses should either be dismissed or transferred to the Eastern District of California.

Respectfully submitted this 3rd day of February, 2021.

**BODYFELT MOUNT LLP**

BY: _____

Richard A. Lee, WSBA No. 17537
Email: lee@bodyfeltmount.com
Phone: (503) 243-1022
Fax: (503) 243-2019

Of Attorneys for Defendant Factory Technologies, Inc.

DEFENDANT FACTORY TECHNOLOGIES, INC.'S MOTION TO DISMISS, ALTERNATIVE MOTION TO TRANSFER VENUE, AND REQUEST FOR ATTORNEY FEES UNDER RCW 4.28.185(5) (3:21-cv-05073-MJP) – Page 24

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served a true copy of the foregoing **DEFENDANT FACTORY TECHNOLOGIES, INC.'S MOTION TO DISMISS, ALTERNATIVE MOTION TO TRANSFER VENUE, AND REQUEST FOR ATTORNEY FEES UNDER RCW 4.28.185(5)** on the following attorneys on the date noted below via the following method:

C. Fredrick Meine III
Coleman & Horowitt, LLP
499 W Shaw Ave., Suite 116
Fresno, CA  93704
Fax: (559) 248-4830
Email: fmeine@ch-law.com;
Cc:    dweiland@ch-law.com; jsheen@ch-law.com; klingenfelter@ch-law.com
            *Of Attorneys for Plaintiff*

Martin J. Pujolar
Mark C. Dean
Forsberg & Umlauf, P.S.
901 Fifth Ave., Suite 1400
Seattle, WA  98164
Fax: (206) 689-8501
Email: MPujolar@foum.law
            MDean@foum.law
            *Of Attorneys for Defendant Central Valley Electric, Inc.*

Method:    ☒ US Mail, postage prepaid
                ☒ Email – Courtesy Copy
                ☐ Facsimile
                ☐ Hand Delivery
                ☐ CM/ECF Electronic Service

Dated this 3rd day of February, 2021.

BY: _____
Richard A. Lee, WSBA No. 17537
Email: lee@bodyfeltmount.com
Phone: (503) 243-1022
Fax: (503) 243-2019

Of Attorneys for Defendant Factory Technologies, Inc.

BODYFELT MOUNT LLP
Attorneys at Law
319 SW Washington Street, Suite 1200
Portland OR 97204
Phone: 503-243-1022 Fax: 503-243-2019